**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| CANDIDA STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:07cv686-WHA |
| | ) | |
| | ) | (WO) |
| THE CITY OF MONTGOMERY, | ) | |
| ARTHUR BAYLOR, Chief of Police, | ) | |
| BOBBY BRIGHT, Mayor, in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I. <u>INTRODUCTION</u>

This case is before the court on a Motion for Partial Summary Judgment (Doc. #33) filed by the Plaintiff, Candida Stokes, and a Motion for Summary Judgment (Doc. #35), filed by the Defendants, the City of Montgomery, Chief of Police Art Baylor, and Mayor Bobby Bright.[1]

The Plaintiff filed a Complaint and an Amended Complaint against the City of Montgomery, Chief of Police Arthur Baylor, and Mayor Bobby Bright, bringing claims of disability discrimination in violation of Titles I and II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act (Count I), sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended (Count II), and interference and retaliation under the Family Medical Leave Act ("FMLA")(Count III).

---

[1] In moving for summary judgment, the Defendants have not separately addressed claims brought against the individual defendants in their individual capacities.  Therefore, the court will treat all of the Defendants the same for purposes of the Defendants' motion for summary judgment as to the ADA, Rehabilitation Act, and Title VII claims.  The court will, however, as discussed below, address the individual defendants separately for purposes of the FMLA claims.

The Plaintiff has moved for summary judgment only on her interference claim brought under the FMLA.  The Defendants have moved for summary judgment as to claims in each count of the Amended Complaint.  For the reasons to be discussed,  the Plaintiff's Motion for Summary Judgment is due to be GRANTED as to her FMLA interference claim against the City of Montgomery, and the Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000)(*en banc*).

## III. <u>FACTS</u>

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Candida Stokes ("Stokes"), was employed as a police officer with the City of Montgomery, Alabama.  She was hired in 2002 as a police officer and was promoted to Corporal.  Her duties as Corporal included patrolling a route, making arrests and stops, performing roll call, inspecting officers and patrol vehicles, assigning routes, assisting in creating work schedules, training officers and responding to calls which required a supervisor.

Defendant Arthur Baylor ("Baylor") is the Chief of Police of the City of Montgomery, Alabama.  He has the authority to approve or disapprove discipline.  Lieutenant Colonel Kevin Murphy ("Murphy") is the division commander of the patrol division.  Defendant Bobby Bright

("Bright") is the Mayor of the City of Montgomery, Alabama.  He has the authority to terminate City employees.

On December 19, 2005, following the death of her mother and her own divorce, Stokes attempted to end her own life by taking a large number of over-the-counter sleep aid pills.  She was hospitalized for depression for two weeks.  Stokes had been receiving treatment for depression for several years before she attempted to take her own life.

Stokes received outpatient mental health treatment after being released from the hospital. Stokes was given FMLA leave beginning on December 19, 2005.  That leave expired on January 12, 2006.

At the end of her FMLA leave, Stokes reported for work, having been released  by a physician to work without restriction.  On January 13, the Defendants placed Stokes on administrative leave and required her to undergo a psychological evaluation by Dr. David Schaffer, a physician selected by Defendants.  On January 20, 2006, Dr. Schaffer released Stokes to return to her position as police officer, without restrictions.  Dr. Schaffer noted that an important consideration in Stokes's suicide attempt was extreme stress and that she had been chronically deprived of sleep.

On January 24, 2006, the Defendants placed Stokes on Administrative Duty until further notice.  Stokes was not allowed to wear her police uniform or to be armed.  Stokes was limited to taking telephone calls and stamping reports.

On February 1, 2006, the Defendants notified Stokes that she was being investigated for disciplinary action due to her suicide attempt.  Stokes was charged with violation of a duty to remain fit, under Article I, Section 1.410, and duties of responsible employment, under Section

4

1.330 of the Manual of Rules and Regulations of the Montgomery Police Department.   Stokes contends that during the investigation she explained to the Internal Affairs Investigator that she continued to receive treatment for her depression.

On February 2, 2006, the Defendants denied Stokes's request for a lateral transfer to another department.  Murphy recommended Stokes's dismissal.  Stokes had a hearing before the trial board on February 28, 2006.  Baylor officially recommended that Stokes be terminated.  On May 9, 2006, Stokes was terminated.  The Defendants have stated that she was terminated because her suicide attempt violated two work rules and presented a risk of liability for the City of Montgomery.

## IV. <u>DISCUSSION</u>

### A.  ADA and Rehabilitation Act Claims

In moving for summary judgment, the Defendants have acknowledged that Stokes asserts disparate treatment, disparate impact, and retaliation claims based on what she alleges to be a disability under the ADA and the Rehabilitation Act.[2]  *See* Doc. #35 at p. 2, Doc. #36 at p.s 6-7. Stokes has also brought a failure to accommodate claim which was  not addressed in the Defendants' Motion for Summary Judgment.  *See* Amended Complaint (Doc. #28-2 at ¶ 25). The court will address each claim in turn.

### 1.  Disparate Treatment Claims

---

[2] There is apparently no dispute in this case that the City of Montgomery is a recipient of federal funds for purposes of § 504 of the Rehabilitation Act.

To establish a prima facie case of disability discrimination, a plaintiff must show that (1) she has a disability, (2) she is a qualified individual, and (3) she was discriminated against because of that disability.  *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1132 (11th Cir. 1996).[3]

a.  Disability Pointed to by Stokes

A disability is (a) a physical or mental impairment that substantially limits one or more major life activities, (b) a record of such impairment, or (c) being regarded as having such an impairment.  *Id.*  Depression has been held to constitute a mental impairment.  *Id.*  There is apparently no dispute that Stokes suffers from the impairment of depression.  The court, therefore, turns to the question of whether Stokes was substantially limited in a major life activity.

The Defendants dispute that Stokes is an individual with a physical or mental impairment that substantially limits one or more major life activity.   The Defendants state that the evaluations done by mental health professionals which state that Stokes is fit for duty negate any claim of being disabled.

Stokes states that she is substantially limited in the major life activity of caring for herself.  To support this contention, Stokes has cited *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2d Cir. 2003).  In *Peters*, the Second Circuit held that "mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself,"

---

[3]  This statement of the prima facie case by the Eleventh Circuit actually includes the ultimate proof in the case in the third prong, which should instead be stated as a requirement that an adverse employment action was taken.  *See Brandon v. Lockheed Martin Aeronautical Systems*, 393 F. Supp. 2d 1341, 1345-6 (N.D. Ga. 2005).  In any event, the Defendants do not contend that Stokes must prove discrimination on the basis of a disability in order to establish a prima facie case, but acknowledge that traditional *McDonnell Douglas* analysis applies.

and therefore, constitutes an impairment which substantially limits a major life activity. *Id.* This holding came in the context of an argument that the plaintiff was perceived as having an impairment which substantially limited a major life activity. *Id.* Stokes argues that the same rationale should apply to her argument that she was actually, not just perceived as, substantially limited in the major life activity of caring for herself.

In applying Eleventh Circuit law, the timing of the events at issue in this case appear to preclude a finding that Stokes is actually substantially limited in a major life activity of caring for herself. In *Pritchard*, the district court concluded that, although the plaintiff had put on evidence about limitations on daily activities, she had not shown that those limitations existed at the time she was terminated. *Pritchard*, 92 F.3d at 1132. The Eleventh Circuit disagreed, stating that, although it agreed that the mere existence of depression as an impairment was insufficient, there was evidence that the plaintiff's physical and mental symptoms of depression existed at the time of her termination. *Id.* at 1134. This court takes from this analysis that the limiting symptoms must exist at the time of the adverse employment action in order for the employee to be considered disabled.

In this case, the court has evidence that Stokes suffered from depression which was exacerbated by stress and lack of sleep so that she attempted to take her own life. It was at that point that she was substantially limited in the major life activity of caring for herself. There is no evidence, however, that after her suicide attempt she continued to have any symptoms of depression which are substantially limiting. As the Defendants point out, the medical evidence affirms Stokes's fitness for duty and does not indicate that she has any continuing symptoms of depression which would support a finding that she is substantially limited in a major life activity.

Therefore, the court agrees with the Defendants that evidence has not been presented which would allow for a conclusion that Stokes has a physical or mental impairment that substantially limits one or more major life activities.

Stokes also argues, however, that she is disabled under the second and third prong of the disability definition.  The court begins with the third definition; namely, being regarded as having an impairment.  Persons are regarded as having an impairment if they are treated as if they are disabled regardless of their actual condition.  *Harris v. Thigpen*, 941 F.2d 1495, 1524 (11th Cir. 1991).   A plaintiff is "regarded as" being disabled if she meets one of three conditions: (1) she has a physical impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) she has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) she has no physical or mental impairment but is treated by an employer as having such an impairment.  *See* 29 C.F.R. § 1614.203(a)(5).  For a plaintiff to prevail under this theory, then, she must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is "substantially limiting" and significant.  *Rossbach v. City of Miami*, 371 F.3d 1354, 1359-60 (11th Cir. 2004).

The Defendants state that Stokes has not offered any testimony that anyone at the City of Montgomery perceived her as mentally ill or as having a disability.  The Defendants state that Stokes's termination was based on a violation of the rules and a concern for future liability, not on any disability.  The Defendants further argue that Stokes is blurring a line between her alleged impairment, which is depression, and her attempted suicide.  The Defendants state that at no time did they consider Stokes's impairment, depression, in assessing whether she had

violated City rules by attempting suicide, and state that Stokes has not demonstrated that she is substantially limited in the major life activity of working.  *See Rossbach*, 371 F.3d at 1361-62 (holding that a person who is substantially limited in the major life activity of working as a police officer, or who is regarded as being so-limited, is not disabled within the meaning of the ADA because a police officer is not a broad enough class of jobs to constitute a substantial limitation).   Stokes, however, has pointed to the major life activity of caring for oneself.

As noted previously, the Second Circuit in *Peters* reasoned that an employer who terminates an employee for fear that the employee's depression will drive her to suicide has acted on the basis of a perception of disability because a "mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself."  *Peters*, 320 F.3d at 168.  This court is persuaded by this reasoning.

The deposition testimony of the person identified by the Defendants as the ultimate decision maker in this case, Bright, calls into doubt the position by the Defendants that they did not consider Stokes's impairment, depression, in terminating her.  Bright was asked in his deposition to comment on the reasons for Stokes's termination.  Bright did not state the violation of any rules by Stokes.  Plaintiff's Ex. # 15 at p.s 22-24.  Instead, when asked whether Stokes could be the type of police officer the City of Montgomery needed, Bright testified, "Not with the fact that she acted out her depression."  *Id.* at p. 24: 18-19.  He also testified that he thought the job of police officer was tough for a "completely okay person," which he defined as a person who does not have "depression and the mentality to commit suicide."  *Id.* at p. 23: 3-9.

Other testimony of City of Montgomery employees similarly casts doubt on whether Stokes was regarded as being substantially limited in the major life activity of caring for herself.

9

Although the Defendants have stated that Stokes was terminated because she posed a risk of liability, the risk posed by Stokes which has been pointed to by the Defendants throughout this case is somewhat ill-defined.  Some representatives of the Defendants have attempted to define the risk in terms of risk to the public, pointing to a concern that Stokes herself would shoot another person.  Lieutenant Colonel K.J. Murphy ("Murphy"), however, testified that his concern was that  if "[f]aced with a deadly force encounter, and she wanted to end her own life, she would allow herself to get shot and killed," and another officer with her "may very well get killed too."  Defendants' Supp. Ex. #6 at p. 62: 16–63:1.  Murphy further stated that John Carnell ("Carnell"), Risk Manager of the City of Montgomery, agreed with this concern.  *Id.* at 63: 2-6.

When viewed in a light most favorable to the non-movant, although the evidence in this case does not support a finding that Stokes was actually substantially limited by her depression in the major life activity of caring for herself at the time of her termination, the testimony of representatives of the Defendants creates a question of fact as to whether she was regarded as being so-limited.[4]

Stokes finally argues that she had a record of an impairment.  A person has a record of impairment if she has a history of having an impairment that substantially limits one or more major life activities.  *Hilburn v. Murata Electronics N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999).

---

[4]  Accordingly, the court need not address Stokes's argument that, because Murphy contacted APOSTC to confirm that Stokes's illness would result in the revocation of Stokes's APOSTC certification, the employer regarded that employee as substantially limited in a broad class of jobs.

Stokes has stated in an affidavit that she has been treated off and on for depression since she was sixteen years old.  Plaintiff's Ex. #24 ¶ 2.  She was in counseling at the time she attempted to commit suicide.  *Id.*  Stokes further states that during the Internal Affairs investigation of her suicide attempt, she told the investigator about her depression and the events that led up to her suicide attempt.  *Id.* at ¶ 5.  She also told the investigator that she had completed an in-patient and out-patient treatment program and was currently enrolled in counseling. *Id.*

Stokes points to *Pritchard* in which the Eleventh Circuit considered evidence that the employee was placed on disability leave as evidence that she had a record of being impaired. *See Pritchard*, 92 F.3d at 1134.   In this case, although Stokes was not placed on leave labeled "disability leave," she was placed on administrative leave and referred for a medical evaluation. It is also undisputed that she was hospitalized after her suicide attempt.  The court concludes, therefore, that Stokes has established a record of impairment.

"The record-of-impairment standard is satisfied only if she actually suffered a physical impairment that substantially limited one or more of her major life activities." *Hillburn v. Murata Electronics N.A.*, 181 F.3d 1220, 1229 (11th Cir. 1999).   Under the relevant regulations, relied on by the Eleventh Circuit, the impairment in the record "must be an impairment that would substantially limit one or more of the individual's major life activities."  *Id.* (quoting 29 C.F.R. pt. 1630, App. § 1630.2(k) (1997)).  The regulations also provide that the "definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." 29 C.F.R. pt. 1630, App. § 1630.2(k) (1997).   The regulation covers mental disabilities which have occurred in the past as long as there is a record of such

11

disabilities. *Id.* (stating "For example, this provision protects former cancer patients from discrimination based on their prior medical history.").

The Defendants address for the first time in their reply brief the record of impairment prong of the disability definition, and contend only that they did not rely on a record of impairment in deciding to terminate Stokes.   The Defendants argue that the only medical information considered by the Defendants was evidence from doctors that Stokes was able to perform the functions of a police officer.   There is evidence, however, that the Defendants knew Stokes had depression.  For instance, when Baylor was asked whether, prior to recommending Stokes's termination, he was aware that she had been diagnosed with depression, he answered that she told Sergeant Bolton that she was involved with counseling.  Plaintiff's Ex. # 4 at p. 215:17-216:2.  Officer Kevin Murphy also testified in his deposition that he did not make the recommendation for Stokes's termination immediately after her suicide attempt, but after he "read the investigative file," and that the recommendation was based on the facts and evidence in the file.  Defendants' Ex. #7, p. 117: 13-4, 20-1.  Bright also testified that he indicated he knew Stokes had depression and considered her depression in terminating her, because he testified that in deciding to terminate Stokes he was concerned that she was not a person "that doesn't have the depression and mentality to commit suicide."  Plaintiff's Ex. #15 p. 22:1-23:9.

The Defendants have argued that they did not consider Stokes's depression, but merely the act of attempted suicide in terminating her.  Given evidence of Baylor's and the Internal Affairs Investigator's awareness of her counseling for depression, and Bright's statement which could be interpreted as stating that he considered Stokes's depression, the court must conclude that whether or not the Defendants relied on her record of depression, in addition to her suicide

12

attempt, is a question of fact for the jury.  *See E.E.O.C. v. DaimlerChrysler Corp.*, 111 Fed.

Appx. 394 (6th Cir. 2004) (inquiring whether sufficient evidence had been presented to allow a

reasonable trier of fact to conclude that the employer based its decision on a record of disability).

 In summary, while the evidence in this case does not support a finding that Stokes is

actually substantially limited in a major life activity by the impairment of depression, the

evidence does create a question of fact whether at the time of her termination she was perceived

by her employer to be so-limited, and/or whether her employer terminated her based on a record

of being so-limited.  Stokes has, therefore, established the first element of her prima facie case of

disability discrimination.

b.  Stokes's Qualification for the Position

 The second element of a prima facie case of disability discrimination is a showing that

the plaintiff is qualified.  *See Pritchard*, 92 F.3d at 1132.   The Defendants do not dispute this

element of the prima facie case directly, but as Stokes points out, the Defendants appear to have

conflated this element of the prima facie case with their articulation of a non-discriminatory

reason.

 In an ADA case, unlike other types of discrimination cases, an employer may defend on

the basis that an employee is not qualified for the position because that employee poses a "direct

threat."  42 U.S.C. § 12111(3).  A direct threat is "a significant risk to the health or safety of

others that cannot be eliminated by reasonable accommodation."  *Id.*  By arguing that her suicide

13

attempt convinced the Defendants that Stokes posed a danger in her role as police officer, the

Defendants have essentially, although inartfully, argued that Stokes is not qualified.[5]

> The C.F.R. defines direct threat as follows:
>
>  (r)  Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
> (2) The nature and severity of the potential harm;
> (3) The likelihood that the potential harm will occur; and
> (4) The imminence of the potential harm.

29 C.F.R. § 1630.2 (r).

The court is aware of only one published decision applying this provision in a case where

a law enforcement officer made a suicide attempt.  *See McKenzie v. Dovala*, 242 F.3d 967 (10th

Cir. 2001).   In *McKenzie*, the court found a genuine issue of material fact regarding whether the

sheriff's deputy was qualified to resume employment where there was "no evidence suggesting

in what way, once she had undergone rehabilitation and had been cleared by her doctor,

employing McKenzie in a position that does not require the use of force would create a direct

threat to the public or to her co-workers."  *Id.* at 974-75.

---

[5] Because Stokes recognized that the Defendants were essentially making this argument, and responded fully to the qualification argument in her brief, the court considers the argument as if the Defendants have challenged Stokes's qualification in moving for summary judgment.

Stokes argues that the Defendants may not merely rely on fears about Stokes's ability to work.  Stokes contends that the Defendants rejected the medical opinions offered to them that Stokes was qualified to work without restrictions.  Stokes says that because the Defendants have offered no objective evidence, their determination is entitled to no weight.  Stokes has not, however, moved for summary judgment as to this issue.  Therefore, while the court agrees that the Defendants are not entitled to summary judgment on this point, the question of whether Stokes is qualified, with or without accommodation, is one which will have to be determined by the trier of fact.

### c.  Stokes's Proof of Discrimination

### I.  Direct Evidence

Stokes contends that she has a direct evidence case of disability discrimination.  The Defendants, although given an opportunity to do so in their reply brief, have not responded to this argument.  Stokes states that because the Defendants have acknowledged that they terminated Stokes because she attempted to commit suicide, the Defendants acknowledge that they terminated her because of her disability.

In the context of employment discrimination cases, direct evidence of intent to discriminate is evidence which, if believed, proves the existence of a discriminatory motive without inference, and evidence which merely suggests that the employer acted with a discriminatory motive is circumstantial evidence.  *See, e.g., Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989); *see also Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999).  Direct evidence of discrimination is evidence

which reflects a discriminatory attitude correlating to the discrimination complained of by the employee. *Wilson*, 376 F.3d at 1086. "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330. Moreover, direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor. *Carter*, 870 F.2d at 582.

The distinction between acting on a disability and the disability itself has been identified as an artificial distinction under the law under certain analyses. *See McKenzie*, 242 F.3d at 974. The court is not, however, aware of any cases which have determined that the distinction is irrelevant to a determination of whether evidence is direct or circumstantial. To the contrary, in an unpublished opinion relied upon by Stokes from the Sixth Circuit, the court reasoned that, although the act of attempted suicide and the underlying disability are connected, statements that the employer acted because of the suicide attempt requires an inference that action was taken on the basis of disability. *See Chandler v. Specialty Tires of Am.*, 134 Fed. Appx. 921 (6th Cir. 2005). The court, therefore, determines that because the Defendants stated that they relied on the fact of Stokes's suicide attempt, an inference must be drawn that they were also acting on the basis of her disability. Therefore, the court concludes that this is not a direct evidence case

ii. Circumstantial Evidence

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of disability by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, after the plaintiff has established a prima facie case of

discrimination, the burden of production is placed upon the employer to articulate a legitimate

nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 254 (1981).  The plaintiff may seek to demonstrate that the proffered

reason was not the true reason for the employment decision "either directly by persuading the

court that a discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v.*

*Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  A plaintiff's prima facie case,

combined with sufficient evidence to find that the employer's asserted justification is false, may

permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v.*

*Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000).

The charges pursuant to which the Defendants terminated Stokes were violations of work

rules.  The additional reason for her termination, which they have expressed in their brief in

support of summary judgment, is that Stokes posed a danger of liability to the City of

Montgomery.

As to the reason actually given during her termination hearings, that Stokes had violated

work rules, there is evidence of pretext in the form of Bright's deposition testimony wherein he

testified that he made the decision to adopt the recommendation for her termination because she

had attempted suicide, and he does not mention that his decision was based on any violation of

work rules.  *See* Plaintiff's Ex. #15 at p. 23: 1-19.

To support the articulated reason of increased liability by employing a police officer who

had previously attempted suicide,  Defendants cite to *Spades v. City of Walnut Ridge*, 186 F.3d at

17

897, 900 (8th Cir. 1999), in which the court affirmed that increased likelihood of injury where a police officer had shot himself in the head was a legitimate, non-discriminatory reason.

Stokes contends that *Chandler*, referenced above, an unpublished decision of the Sixth Circuit involving a state discrimination law, compels the conclusion that the Defendants' rationale must be rejected.   In *Chandler* the employer expressed that it had lost confidence in the employee's ability to perform the duties of her position as a personnel assistant because of her attempted suicide. *See Chandler*, 134 Fed. Appx. at 930.  The court criticized the employer's reliance on conduct which was related to the disability. *Id.*

The United States Supreme Court has cast doubt on whether an employer's articulated reason is to be deemed insufficient merely because it is related to the disability.  In *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 n.6 (2003), the Court noted as follows:

> To the extent that the court suggested that, because respondent's workplace misconduct is related to his disability, petitioner's refusal to rehire respondent on account of that workplace misconduct violated the ADA, we point out that we have rejected a similar argument in the context of the Age Discrimination in Employment Act.

In addition*, Chandler* was analyzing a slightly different articulated reason from that analyzed in *Spades*, and articulated here, that because of her attempted suicide, Stokes presented an increased risk of liability to the City.   That is, the articulated reason is not merely that Stokes would be unable to perform her job duties, but that the fact of her attempted suicide posed a risk of liability to the City.  Therefore, the court accepts that the reason articulated by the Defendants is a legitimate, non-discriminatory one.  That finding, however, does not foreclose Stokes from creating a question of fact as to whether the reason given is pretextual.

18

As discussed above in connection with the "direct threat" defense, Stokes has pointed to evidence that medical professionals have cleared her to return to her position without restriction. Some of the medical evidence Stokes has also pointed to comes from the examination ordered by the Defendants when she was placed on administrative duty.  When asked in his deposition whether he had any evidence that Stokes might again attempt suicide, Carnell answered that he did not.  Plaintiff's Ex. #4, p. 21: 4-6.  In addition, when Carnell was asked whether he currently had any liability concerns if Stokes returned to the department, Carnell answered that he does not.  *Id.* at p. 76: 1–16.   Bright similarly testified "not to [his] knowledge" when asked whether the City had "any medical evidence that supported the department's actions."  Plaintiff's Ex. # 15 at p. 33:11-15.  Bright further elaborated that the decision was based "strictly on [his] experience and many years of experience."  *Id.* at 33:15-16.

Stokes has further pointed to evidence that other officers who were charged with violating work rules because they used inappropriate excessive force were only suspended and referred for anger management counseling, rather than being terminated.  Carnell testified in his deposition that there was an officer who was "evaluated due to some anger issues, some domestic violence issues, that was allowed to return to work after an evaluation by the folks over at EAP." Plaintiff's Ex. #4 at p. 30: 10-11.

Stokes has also presented evidence that an officer who struck a handcuffed suspect in the face was changed with violation of duty of responsible employment, specifically, engaging in an activity which may reflect negatively on the integrity, competency, or ability of the individual to perform his duty or may reflect negatively on the reputation of the department and duty in the use of force.  Plaintiff's Corrected Ex. # 23.  Although the officer was recommended by the Trial

Review Board for termination, Bright suspended him for 30 days and required him to attend counseling for anger management.  *Id.*

The position taken by the Defendants in this case is that there was no consideration of Stokes's alleged disability, depression, and that the Defendants terminated her only because the fact of her attempted suicide was a violation of the rules and posed a danger of future liability. As outlined above, however, Stokes has pointed to evidence that the person pointed to as the ultimate decision maker did not consider the rule violation in making the decision, and that the medical evidence, and even the opinion of the Risk Manager, do not support a conclusion that Stokes posed a risk of a future threat.  Stokes has also pointed to evidence that officers arguably posing a potential risk of future liability based on past actions regarding excessive use of force were not terminated.   At least one of those officers, although recommended for termination, was not terminated even though he had engaged in documented excessive force against a suspect. The court concludes, therefore, that a question of fact has been created by the evidence cited by Stokes as to whether she was terminated because she was perceived as having a disability or because she had a record of disability.

### 2.  Disparate Impact Claim

To make out a prima facie claim of disparate impact discrimination, a plaintiff must (1) identify the challenged employment practice or policy, and pinpoint the defendant's use of it; (2) demonstrate a disparate impact on a group; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(I); *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 n. 26 (5th Cir. 1999).   In the disability context, a plaintiff may satisfy the second prong of this prima facie case by demonstrating an adverse

impact on herself rather than on an entire group.  *Gonzales*, 176 F.3d 839 n. 26.  A plaintiff still

must show that she is an individual with a disability who is otherwise qualified.  *Allmond v. Akal*

*Sec., Inc.*, No. 4:05cv96(HL), 2007 WL 2904023 (M.D. Ga. Sept. 28, 2007).

Although the Defendants noted in the opening section of their brief in support of

summary judgment that there is a disparate impact claim asserted in this case, *see* Doc. #36 at p.

7, they articulated no further grounds for summary judgment as to that claim.  Questions of fact

have been raised as to the issues pointed to by the Defendants in the context of the disability

disparate treatment claims.  Accordingly, the Defendants' Motion for Summary Judgment is due

to be DENIED as to the disparate impact claim as well.  The court will, of course, revisit this

issue if asked to do so by appropriate motion at trial.

### 3.  Failure to Accommodate

To establish a failure-to-accommodate claim, Stokes must show that: (1) she has a

qualifying disability; (2) she was qualified to perform the essential functions of her job, with or

without reasonable accommodation; and (3) the Defendants refused to reasonably accommodate

her disability.  *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1132 (11th Cir.1996).

The Defendants have not explicitly moved for summary judgment as to the failure to

accommodate claim.  The Defendants have stated that summary judgment is due to be granted as

to Count I of the Amended Complaint, but they do not address the accommodation claim

specifically.  Issues of fact have been raised as to the first two elements of this claim as

discussed above, the only elements addressed by the Defendants in their Motion, so the Motion

for Summary Judgment is due to be DENIED.

### 4.  Retaliation

To establish a prima facie case of ADA retaliation, a plaintiff must show (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Standard v. A.B.E.L. Services, Inc*., 161 F.3d 1318, 1328 (11th Cir.1998). There is no requirement that the person actually be disabled. Therefore, the grounds for summary judgment articulated by the Defendants with respect to the ADA and § 504 claims generally do not apply to this claim. Stokes contends, and in the reply brief the Defendants do not dispute, that they have not moved for summary judgment on the retaliation claim. Although the Defendants did identify Stokes as asserting a disability retaliation claim in their Motion for Summary Judgment, *see* Doc. #35 at p. 2, the court agrees that the Defendants have failed to meet their burden as movants as to this claim to present evidence showing there is no dispute of material fact, or point out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Accordingly, summary judgment is due to be DENIED as to the disability retaliation claim in Count I of the Amended Complaint.

### B.  Title VII

#### 1.  Disparate Treatment

The Defendants move for summary judgment as to the gender discrimination claim under Title VII on the grounds that Stokes cannot establish a prima facie case, or that the articulated reasons for her termination are pretexts for gender discrimination.

The elements of a prima facie case of gender discrimination are 1) the plaintiff is a member of a protected class; (2) she suffered an adverse employment action; (3) her employer

22

treated similarly-situated employees outside her class more favorably; and (4) she was qualified

to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

The Defendants do not dispute that Stokes meets three of the prima facie case elements;

they contest only that they treated similarly-situated male employees more favorably.  Stokes

responds that there are male officers who have been charged with violating the rules regarding

responsible employment and have not been terminated.

Although none of the officers identified are alleged to have attempted suicide, they were

charged with infractions of duties of responsible employment, which Stokes was charged with

violating.  Stokes has pointed to evidence regarding Officer B., a male officer, who was charged

with violating the Duties of Responsible Employment, Duty in the Use of Force, after punching a

prisoner in the face.  The disciplinary board voted to recommend termination, but Bright

disciplined the officer with a fifteen day suspension and anger management sessions.  Plaintiff's

Ex. #18.  Similarly, Corporal B., a male officer, was suspended, rather than being terminated as

recommended by the Board, after being charged with violation of Duties of Responsible

Employment and Duty in the Use of Force.  *See* Plaintiff's Ex. #23.

The law does not require that a comparator be "engaged in the same or nearly identical

conduct" as the disciplined plaintiff. *Anderson v. WBMG-42,* 253 F.3d 561, 565 (11th Cir.

2001).  Instead, the law only requires "similar" misconduct from the similarly situated

comparator. *Id.*  In comparing infractions, "precise equivalence in culpability" is not the

governing standard, but rather "comparable seriousness."  *Id.* at. 565 n.2 (quoting *McDonald v.*

*Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Although given an opportunity to do so in the reply brief filed in this case, the Defendants have not responded in any way to the comparator evidence presented by Stokes. The court assumes that the Defendants have, therefore, conceded that material issues of fact exist as to the comparator evidence. The court further assumes that the Defendants would rely on the same articulated reasons discussed above. For the same reasons discussed above, therefore, questions of fact preclude summary judgment on the issue of pretext. Therefore, while the court may determine, if asked to do so in an appropriate motion at trial, that the comparator evidence is not sufficient to present to the jury, or, if the jury is presented the question, a reasonable jury may ultimately reject that there was gender discrimination, the Motion for Summary Judgment is due to be DENIED as to the disparate treatment on the basis of gender claim.

### 2.  Retaliation

Stokes brings a claim of retaliation under Title VII in Count II of her Amended Complaint. Although Stokes merely references the word "retaliation" in the introductory paragraph of her response to the Motion for Summary Judgment, and provides no further discussion of that claim, she is under no duty to adduce evidence to support this claim unless the Defendants present evidence showing there is no dispute of material fact, or point out that the nonmoving party has failed to present evidence in support of some element of its case.

The references the Defendants have made to a Title VII retaliation claim are to identify that claim in their Motion for Summary Judgment, *see* Doc. #35 at p. 2, and to cite law regarding the opposition clause of Title VII's retaliation provision in their brief. *See* Doc. #36 at pp. 19-20. It appears, therefore, that the Defendants intend for the court to apply their limited arguments regarding lack of comparator evidence and pretext to the retaliation claims as well.

Therefore, for the reasons discussed above, the court concludes that Stokes has created a substantial issue of material fact as to pretext which precludes summary judgment as to this claim as well.[6]

### C.  FMLA Claims

#### 1. Interference

Stokes has moved for summary judgment on her FMLA interference claim asserted in Count III of the Amended Complaint.  Stokes asserts that the Defendants have only opposed this motion, but have not moved in their own Motion for Summary Judgment as to the FMLA interference claim.  While the Defendants have not clearly cross-moved for summary judgment on this claim, in their brief they state that summary judgment is due as to "the FMLA violation was well as retaliation."  Doc. #36 at p. 26.

There is a substantive right to reinstatement under the FMLA, by which an employee returning from covered leave is entitled to be restored to her former position or its equivalent.  29 U.S.C. § 2614(a)(1); *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).  Although an employer is entitled to demonstrate that it would have discharged an employee, or not returned that employee to an equivalent position, even had the employee not been on FMLA leave, *see O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349 (11th Cir. 2000), that defense has not been raised in the Answer or in response to the Motion for Summary Judgment in this case.

---

[6] The court will revisit the sufficiency of this claim if asked to do so by appropriately-filed motion at trial.

The only aspect of Stokes's Motion for Summary Judgment that the Defendants dispute is whether Stokes was returned to an equivalent position.  The Defendants contend, citing Murphy's affidavit, that because Stokes returned at the same rate of pay, with the same benefits package, and worked the same shift, she was returned to an equivalent position.

The Defendants also argue that, although Stokes has stated in brief that her position after she returned from FMLA leave was substantially different from her previous position, she has not presented evidence to substantiate that comparison.  To the contrary, in support of her partial Motion for Summary Judgment Stokes has presented an affidavit in which she states that, although she was released to return to work without restriction, she was assigned to a back desk, and she could not wear her uniform, badge, or service weapon. Plaintiff's Ex. #1 at ¶ 7.  She also states that her duties were limited to taking phone calls and stamping reports.  *Id.*  Before she took FMLA leave, she had supervisory duties over other officers as well as her own patrol route. She carried a service weapon and wore a badge.  *Id.* at ¶ 2.

The applicable regulations provide as follows:

(a) An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215.

Other courts applying this regulation have concluded that, even if a new position carries equal pay and benefits to a former position, where the new position is "not as sophisticated, nor does it require a similar level of training and education" as the former position, the positions are not equivalent.  *Donahoo v. Master Data Center*, 282 F. Supp. 2d 540, 552 (E.D. Mich. 2003);

26

*see also Nocella v. Basement Experts of Am.*, 499 F. Supp. 2d 935, 941-2 (N.D. Ohio 2007) (finding that defendants failed to establish equivalency where benefits, pay and location were the same, but two positions had different levels of responsibility and authority).

Equivalency of position ordinarily is an inquiry that is fact-intensive, and would not seem to lend itself to a determination as a matter of law.  In this case, however, the Defendants have only opposed summary judgment, or moved for summary judgment, by pointing to evidence that pay grade, benefits, and shifts of the two positions are the same, without addressing the requirement of the applicable regulation and interpretative case law that skill, effort, responsibility, and authority also must be substantially equivalent.  In light of Stokes's evidence that her position before and after taking FMLA leave were not substantially equivalent in skill, effort, responsibility, and authority, and the Defendants' failure to present any evidence to create a question of fact as to that evidence, summary judgment is due to be GRANTED to the Plaintiff on her FMLA interference claim, and DENIED to the Defendants, to the extent that they have moved for summary judgment as to this claim.

There is an issue, however, as to the claims brought against individual Defendants Bright and Baylor under the FMLA.  In the Eleventh Circuit, "a public official sued in his or her individual capacity is not an 'employer' under the FMLA, and therefore there is no federal subject matter jurisdiction over such a claim."  *Wascura v. Carver,* 169 F.3d 683, 687 (11th Cir. 1999).  Therefore, the FMLA interference claim against Baylor and Bright individually are due to be dismissed without prejudice.

### 2.  Retaliation

In order to establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. *See Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).

Close temporal proximity between the employee's protected conduct and the adverse employment action generally is sufficient to create an issue of fact to establish a causal connection. *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir.1995). An exception to the general rule regarding close temporal proximity is that where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct, there is no causal connection. *Brungart v. BellSouth Telecomm., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000).

The Defendants have moved for summary judgment on Stokes's FMLA retaliation claim, stating that, although they do not dispute that Stokes engaged in a protected activity and suffered an adverse employment action, they do dispute that Stokes can establish a prima facie case of retaliation, because there is no evidence that the decision maker, Bright, knew that Stokes had taken FMLA prior to her termination. The Defendants cite to evidence that Bright has testified that he did not know Stokes had taken FMLA leave.

Stokes argues that there is a question of fact as to the Defendants' contention. She points out that Murphy and Baylor were aware that Stokes had taken FMLA leave. Stokes points to notes[7] from Linda Holmgren, who was treating Stokes, who states on February 3, 2006 that she

---

[7] The Defendants have not objected to the admissibility of this evidence.

28

spoke with Carnell and was told that Stokes was going to lose her job.  Plaintiff's Ex. #16.

Holmgren conveyed this to Stokes that day.  *Id.*  Carnell testified in his deposition that Holmgren

did not mischaracterize this conversation, and although he does not remember it, he probably

learned that Stokes would be terminated from Murphy.  Plaintiff's Ex. #4 at p. 54:18-56:7.  From

this evidence, Stokes contends that there is a question of fact as to whether the decision to

terminate Stokes was made as of February 3, 2006, and that the decision was merely ratified by

Bright, thereby satisfying the causal connection requirement of a prima facie case.  Stokes also

argues that those with knowledge that Stokes had taken FMLA leave were in a position to

influence the decision ultimately made by Bright, based on a recommendation that Stokes be

terminated.  The court notes that Bright testified that it was his job to make "the final

determination based on the recommendations" and "why they made the recommendation, you'll

have to ask them." Plaintiff's Ex. #15 at p. 45: 12-17.

There is certainly support in the law for the idea that intent of a person involved in the

decision making process is relevant if the ultimate decision maker merely rubber-stamped the

recommendation.  *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir.1998),

*cert. denied*, 528 U.S. 930 (1999).  There is also authority, however, that with respect to a FMLA

retaliation claim, a court cannot apply principles of constructive knowledge.  *See Brungart*, 231

F.3d at 800.  Stokes is not arguing that Bright should have known that she was on FMLA leave,

but rather that he relied on a recommendation for termination by persons in a position to

influence him and who were aware she had taken FMLA leave.  Therefore, while the court

cannot agree that there is a legally-significant question of fact on a theory that Bright should

have known Stokes had taken FMLA leave, the court does conclude that a material issue of fact

29

has been created as to whether the true decision maker, who did have knowledge of her FMLA leave, acted on the basis of her having taken FMLA leave. *Lippert v. Cmty Bank, Inc.*, 438 F.3d 1275 (11th Cir. 2006) (distinguishing constructive knowledge from questions of credibility). As discussed above, the court has also concluded that there are questions of fact from which a reasonable juror could find the articulated reasons for Stokes's termination to be pretextual. Accordingly, the court concludes, drawing all reasonable inferences in favor of the non-movant, that the Defendants' Motion for Summary Judgment is due to be denied as to the FMLA retaliation claim. The court will, however, dismiss the FMLA claims against the individual defendants for lack of subject matter jurisdiction. *See Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999).

## V. <u>CONCLUSION</u>

The focus of the Defendants in moving for summary judgment in this case is their contention that in terminating the employment of the Plaintiff, Stokes, they did not consider her to be disabled, nor did they take into account the fact that she suffers from depression, that she is a woman, or that she had taken FMLA leave. Instead, the Defendants urge the court to accept as a matter of law that Stokes was terminated because she had previously attempted to commit suicide. The court cannot so-conclude, and has found instead that there are questions of fact as to the Defendants' motivation in this case.

The court's Memorandum Opinion and Order in this case, however, should not be read as a general finding that police officers who have attempted suicide cannot be terminated without violating federal law. In fact, it may ultimately be that a trier of fact in this case

determines that the Defendant's actions did not violate the Americans with Disabilities Act, the Rehabilitation Act, Title VII, nor constitute retaliation under the FMLA.

Because the Plaintiff has established liability under the FMLA for interference with her FMLA rights, and because the evidence, viewed in a light most favorable to the non-movant, creates triable issues of fact as to the Plaintiffs' remaining claims, at least with respect to the grounds for summary judgment asserted by the Defendants, it is hereby ORDERED as follows:

1.  The Plaintiff's partial Motion for Summary Judgment is GRANTED in favor of Candida Stokes as to liability on the FMLA interference claim in Count III of the Amended Complaint and against the City of Montgomery.  Damages for this claim will be determined at the trial of this case.

2.  The Defendant's Motion for Summary Judgment is GRANTED only to the extent that Stokes has claimed in Count I of the Amended Complaint that she suffers from an impairment which substantially limits a major life activity.  The Motion is DENIED as to all other disability theories and claims in Count I, the gender claims in Count II, and the FMLA claims asserted against the City of Montgomery in Count III of the Amended Complaint.

3.  The FMLA claims in Count III of the Amended Complaint against Bobby Bright and Art Baylor in their individual capacities are dismissed without prejudice for lack of subject matter jurisdiction.

The case will proceed to trial against all Defendants under the ADA and Rehabilitation Act for disparate treatment, disparate impact, failure to accommodate, and retaliation in Count I of the Amended Complaint, brought by the Plaintiff on the theories that she was regarded as

31

disabled or had a record of disability; the claims in Count II for gender discrimination and

retaliation in violation of Title VII; and against the City of Montgomery only on the FMLA

retaliation claim and the issue of damages for the FMLA interference claim in Count III of the

Amended Complaint.


Done this 25th day of September, 2008.

                              /s/ W. Harold Albritton
                              W.  HAROLD ALBRITTON
                              SENIOR UNITED STATES DISTRICT JUDGE